<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RASHEED MCNAIR,

                Petitioner,

v.

UNITED STATES OF AMERICA,

                Respondent.

Civil Action No. 23-636 (MAS)

**OPINION**

**<u>SHIPP, District Judge</u>**

This matter comes before the Court on Petitioner Rasheed McNair's motion to vacate sentence brought pursuant to 28 U.S.C. § 2255 (ECF No. 1), and Petitioner's amended memorandum in support of that motion (ECF No. 7). Following an order to answer, the Government filed a response to the motion. (ECF No. 17.) Petitioner declined to file a reply. (ECF No. 18.) For the following reasons, this Court will deny the motion, and will deny Petitioner a certificate of appealability.

**I.**     **<u>BACKGROUND</u>**

In its opinion affirming Petitioner's conviction, the Third Circuit described the facts underlying this matter follows:

> A jury convicted [Petitioner] of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). . . .
>
> . . . On February 18, 2018, [Detective Harry] Steimle – a member of the Trenton Police Department's Street Crimes Unit – was on duty and patrolling in Trenton with a fellow detective. Neither Steimle nor his fellow detective were wearing body cameras. Steimle observed a person (who would eventually be identified as

[Petitioner]) wearing a black ski mask and standing in an open doorway to an apartment building. [Petitioner] was holding an object that Steimle believed resembled a firearm. Steimle approached the building and heard a male yell, "squalay," a commonly used alert of police presence. Steimle exited his car, shined a flashlight in [Petitioner]'s direction, and ran toward [Petitioner] and the entrance of the apartment building. [Petitioner] tucked away the item he was carrying and ran inside the apartment building and up the stairs.

Steimle entered the apartment building, drew his handgun, and shouted that all parties should stop and raise their hands. Two other individuals in the building stopped on the second floor and followed Steimle's instructions, but [Petitioner] continued to run up the stairs. Steimle testified that as [Petitioner] turned to the second floor, [Petitioner] "began removing [the] item from the front of his jacket."[] Steimle further testified that he "observed a black slide with a green handle of a semi-automatic firearm."[] Finally, Steimle testified that [Petitioner] shoved the item underneath a doormat located in front of Apartment 3B. Steimle stated that he was approximately three feet away from [Petitioner] when he observed this. Then, [Petitioner] walked down the stairs and was placed under arrest. Backup officers wearing body cameras arrived at the scene shortly after. Steimle testified that he did not lose sight of the item sticking out from underneath the doormat from the time [Petitioner] placed it there until another officer recovered a gun from underneath the doormat.

[Petitioner] was charged with being a felon in possession of a firearm, and he proceeded to trial. At trial, Steimle was the only fact witness presented by the Government. During the direct examination of Steimle, the Government asked Steimle whether he was issued a body camera as a Street Crimes detective (he answered, "no"), whether Steimle had previously worn a body camera when he was a patrol officer (he answered, "yes"), whether Steimle was familiar with how body cameras worked (he answered "yes"), and whether any of the officers who arrived at the scene wore a body camera (he answered, "yes").[]

During cross-examination, [Petitioner]'s defense counsel attempted to discredit Steimle by focusing on the fact that he was not wearing a body camera. Defense counsel asked Steimle a series of questions about his lack of a body camera as a Street Crimes detective, including questions about the Trenton Police Department's policy for body cameras. Steimle testified that only officers in the uniform patrol bureau were required to wear body cameras. Steimle explained that since he was in the Street Crimes Unit, he was not

2

> required to wear a body camera. Defense counsel asked Steimle whether Steimle believed body cameras were helpful to his job. Steimle testified that witnesses, such as confidential informants, may be reluctant to come forward if they were being recorded by a body camera for fear of retaliation.
>
> On redirect, the Government asked Steimle to explain whether there were parts of his job that would be made more difficult by wearing a body camera. Steimle testified: "[p]eople know we do not wear body cameras, and they are more keen to speak to us, because they fear retaliation from shootings . . ."[] The Government asked Steimle whether he "personally had the experience where someone came up to [him] while [he was] on the job and gave [him] information."[] Steimle answered, "yes." The Government then asked whether Steimle believed that the lack of a body camera had anything to do with that. Steimle answered that he did and explained that he knew people were comfortable speaking with him.
>
> After redirect, defense counsel rose to conduct re-cross examination of Steimle. The District Court informed defense counsel that he was not entitled to conduct re-cross examination. The jury convicted McNair, and he was sentenced to 120 months of imprisonment.

*United States v. McNair*, No. 19-3510, 2021 WL 5492802, at *1-2 (3d Cir. Nov. 23, 2021).

## II.  LEGAL STANDARD

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his sentence. Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. Unless the moving party claims a jurisdictional defect or a constitutional violation, to be entitled to relief the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Horsley*,

3

599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)), *cert. denied*, 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003).

### III. DISCUSSION

#### A. No Evidentiary Hearing Is Necessary In This Matter

A district court need not hold an evidentiary hearing on a motion to vacate where "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *United States v. Booth*, 432 F.3d 542, 545-56 (3d Cir. 2005); *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992). "Where the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted by the petitioner or indicate[s] that petitioner is not entitled to relief as a matter of law, no hearing is required." *Judge v. United States*, 119 F. Supp. 3d 270, 280 (D.N.J. 2015); *see also Gov't of V.I. v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985); *see also United States v. Tuyen Quang Pham*, 587 F. App'x 6, 8 (3d Cir. 2014); *Booth*, 432 F.3d at 546. Because Petitioner's claims are clearly without merit for the reasons expressed below, no evidentiary hearing is necessary in this matter.

#### B. Petitioner's Ineffective Assistance of Counsel Claims

In his motion to vacate sentence, Petitioner raises a number of claims in which he asserts that his trial counsel was constitutionally deficient. The standard applicable to such claims is well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also

> show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.
>
> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . [and] a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.
>
> Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

Petitioner first argues that counsel proved ineffective in failing to object to statements made by Steimle regarding the body camera policy as inadmissible hearsay, and that counsel failed to

5

object to the body camera policy testimony as allegedly contrary to the "best evidence" rule as only Steimle's testimony, and not formal policy documents, was provided at trial. Petitioner also contends that counsel failed to object to the testimony of Government expert witnesses as hearsay as they referenced forensic evidence reports that were not themselves admitted into evidence. Turning first to Steimle's testimony, the detective testified as to his personal knowledge of his practices in relation to body cameras and the policies he was required to follow as part of his employment. Such testimony is not hearsay and any objection on that basis would have failed and would provide no basis for habeas relief. *See United States v. Aldea*, 450 F. App'x 151, 152 (3d Cir. 2011) (counsel cannot be ineffective in failing to raise a meritless objection); *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) (same).

An objection on the basis of the best evidence rule would likewise have proved meritless. The best evidence rule only applies where a party is attempting to "prove the content of a writing [or] recording" and does not apply where a witness does not seek to testify as to the contents of a written document but instead merely testifies as to his personal knowledge. *See, e.g., United States v. Miller*, 248 F. App'x 426, 429-30 (3d Cir. 2007). Detective Steimle was not called upon to testify as to the contents of a specific policy document, but instead merely to address his personal knowledge of general police policies which applied to his employment. Even if the Court were to reinterpret the detective's testimony to be about a specific written policy document rather than his general knowledge of applicable police rules, the admission of that testimony was harmless as the applicable camera policies were largely a red herring. It is clear that a jury still would have convicted Petitioner regardless because the detective's testimony put a firearm, recovered at the scene, in Petitioner's hands, and Petitioner's felon status at the time in question is undisputed and was stipulated to at trial. Any failure to raise a best evidence objection thus did not prejudice Petitioner and serves as no basis for habeas relief.

6

Petitioner's assertion that counsel should have objected on hearsay grounds to the testimony of the Government's expert witnesses is likewise without merit. Although the experts did reference certain reports in their testimony, the admission of their testimony did not prejudice Petitioner. The expert witnesses essentially testified to the following: (1) that no identifiable fingerprints were recovered from the firearm taken at the scene and that this was not uncommon; (2) that the serial number of the firearm was obliterated; and (3) that the firearm had traveled in interstate commerce to satisfy the jurisdictional hook of § 922(g). With the slight exception of the fingerprint examination, the experts largely testified based on their own knowledge and examination. The firearms investigator testified that he had not conducted the attempt to recover the serial number of the recovered firearm. Rather, he testified from personal knowledge and his examination of the recovered number that the serial number had been obliterated. In addition, the ATF agent who testified as to the interstate commerce issue directly testified that she personally performed the research into the firearm and its place of manufacture outside of New Jersey. Any objection as to this testimony on hearsay grounds would have been meritless. The fingerprint expert's testimony likewise did nothing but explain why no useable prints were recovered and the rarity of recovering such prints from a firearm. Even granting that parts of the testimony regarding the examination of the recovered firearm may have been based on the work of another officer, the fingerprint testimony was ultimately harmless because it had no bearing on the facts actually at issue in the case. The facts reflected that Petitioner was a felon, Steimle witnessed him in possession of and hiding the firearm, and the firearm had travelled in interstate commerce. Thus, any hearsay objection as to the experts' testimony would have been meritless or had absolutely no effect on the outcome of Petitioner's trial, and counsel was therefore not ineffective in failing to raise such objections.

Petitioner also asserts that counsel should have objected to the testimony of the firearms' expert as he believes that expert's testimony regarding the obliterated serial number amounts to other bad acts evidence and as irrelevant. Any such objection would have been without merit. The firearms expert's testimony was not irrelevant. It directly addressed the chain of custody of the firearm, established that the obliterated serial number had been recovered, and that this was the same serial number used by the ATF to track the firearm's original place of manufacture, which was relevant to the interstate commerce jurisdictional element of Petitioner's charged offense. The expert did not testify that Petitioner obliterated the serial number or was otherwise involved with any such illegal activity. The testimony was directly relevant to Petitioner's case, did not amount to prior bad acts testimony, and was relevant. The testimony, therefore, was clearly admissible. Because any objection to that evidence would have been meritless, these claims provide no basis for relief in this matter. *Aldea*, 450 F. App'x at 152.

In his next series of claims, Petitioner contends that counsel proved ineffective in failing to further investigate his case, specifically arguing that: (1) counsel should have investigated and called the other detective as a witness at trial; (2) counsel should have investigated and called the two other individuals stopped at the apartment complex as potential witnesses for impeaching Detective Steimle; and (3) counsel failed to fully investigate the "credibility" of the detectives involved in Petitioner's case. As one court in this District has explained,

> [i]n *Strickland,* the Supreme Court held that trial counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." 466 U.S. at 691. "The failure to investigate a critical source of potentially exculpatory evidence may present a case of constitutionally defective representation," and "the failure to conduct any pretrial investigation generally constitutes a clear instance of ineffectiveness." *United States v. Travillion,* 759 F.3d

8

> 281, 293 n.23 (3d Cir. 2014) (internal quotations omitted); *see also United States v Gray*, 878 F.2d 702, 711 (3d Cir. 1989) (noting that a complete absence of investigation usually amounts to ineffective assistance because a counsel cannot be said to have made an informed, strategic decision not to investigate); *United States v. Baynes*, 622 F.2d 66, 69 (3d Cir. 1980).
>
> Where a Petitioner can show that counsel's failure to investigate amounts to deficient performance, he must still show prejudice. In order to do so,
>
>> a defendant basing an inadequate assistance claim on his or her counsel's failure to investigate must make "a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming admissibility in court, would have produced a different result."
>
> *United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996) (quoting *Sullivan v. Fairman*, 819 F.2d 1382, 1392 (7th Cir. 1987)); *see also United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011) ("[w]hen a petitioner alleges that counsel's failure to investigate resulted in ineffective assistance, the petitioner has the burden of providing the court with specific information as to what the investigation would have produced"); *United States v. Green*, 882 F.2d 999, 1002 (5th Cir. 1989) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome" of Petitioner's case); *accord Untied States v. Garvin*, 270 F. App'x 141, 144 (3d Cir. 2008).

*Brown v. United States*, No. 13-2552, 2016 WL 1732377, at *4-5 (D.N.J. May 2, 2016).

Petitioner provides little other than his own speculation to suggest that further investigation by counsel would have produced any useful or otherwise beneficial information. Turning first to the two other individuals taken into custody during the police chase, reports provided by the Government indicate that these two witnesses would have been of no benefit to Petitioner had they been investigated further or called as witnesses at trial. The interviews of these individuals reflect that one saw Petitioner in possession of the firearm, which had been tucked into Petitioner's

9

waistband, and that this was the same gun seized by the police. (ECF Nos. 17-4, 17-5.) The other individual would have testified only that Petitioner ran by the witnesses in the stairwell seeking to evade the police. Neither individual's testimony would have been of benefit to Petitioner and one individual's testimony would have further implicated him. Counsel was not ineffective in failing to further investigate or call these witnesses who would not have benefited Petitioner's case and would instead have actively hampered it.

In his remaining investigation-related claims, Petitioner contends that counsel should have further investigated the detectives and police officers involved in his case in the hopes that such investigation *may* have produced evidence of prior wrongdoing, or *may* have revealed that the other detective's testimony *may* have impeached Detective Steimle's version of the events. Petitioner, however, provides no actual evidence that this other detective would have in any way testified in contravention of Detective Steimle. Nor has Petitioner provided clear evidence of misconduct sufficient to show that counsel's failure to further investigate the other detective would have produced any information valuable to the defense which would have impacted the outcome of trial.[1] In the absence of clear evidence that further, useful information would have been obtained, which Petitioner did not provide, Petitioner has failed to show that counsel prejudiced

---

[1] Petitioner largely concerns himself with reports of other misdeeds by the other detective who did not testify at trial. Although such information may have impeached that detective had it been possessed at trial, because he did not testify at trial it would have been irrelevant. Likewise, any alleged misdeeds by the other detective are irrelevant to Detective Steimle's testimony, which clearly established all of the necessary facts. Steimle testified that he saw the gun in Petitioner's possession, saw Petitioner stash the gun, and did not lose sight of the gun until it had been recovered. This testimony does not leave any room for the other detective to plant or otherwise falsify evidence related to the gun. Thus, even if the alleged wrongdoings of the other detective had been available at trial—a fact which would contravene Petitioner's contention that such information was newly discovered after trial and was not previously available per Petitioner's *Brady* and *Giglio* claims—it would not have been admissible to challenge Steimle's credibility. Petitioner, therefore, fails to show that there is good reason to believe the other detective would have been helpful to him at trial had counsel been inclined to call him as a witness.

him in failing to conduct further investigation. Petitioner's investigation-related claims are thus all without merit.

Petitioner also argues that counsel proved ineffective in failing to challenge the sufficiency of the evidence against him. A challenge to the sufficiency of the evidence produced at trial will only warrant the dismissal of a criminal matter where the facts, viewed in the light most favorable to the prosecution, would not permit *any* rational trier of fact to find the defendant guilty. *See, e.g.*, *Eley v. Erickson*, 712 F.3d 837, 847 (3d Cir. 2013) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Here, any motion challenging the sufficiency of the evidence in this matter would have been meritless. Petitioner stipulated that he was a felon at the relevant time, the ATF agent testified that the firearm had travelled in interstate commerce as it had been produced outside of New Jersey, and Detective Steimle's testimony puts the weapon in Petitioner's possession on the night in question. These facts would clearly permit a rational trier of fact to find Petitioner guilty, as the jury did in this case. Thus, a motion challenging the sufficiency of the evidence would have failed. Counsel was therefore not ineffective in failing to file such a motion.[2] *Aldea*, 450 F. App'x at 152.

In his final ineffective assistance of counsel claim, Petitioner asserts that counsel should have filed a motion to dismiss the firearm evidence, largely based on Petitioner's belief that the

---

[2] As part of his sufficiency of the evidence claim, Petitioner also contends that counsel should have consulted with a fingerprint expert to prepare himself to cross examine the Government's expert witness regarding testimony that useable fingerprints were rarely recovered from firearms. Petitioner, however, has failed to show an expert who counsel could have consulted and who would have provided any valuable information. Without such information, Petitioner cannot possibly show that he was prejudiced by counsel's failure to consult with an expert as to the fingerprint information or that further consultation would have been of benefit to the defense. In any event, even if counsel had "better" countered this testimony, it is still not likely that the outcome of trial would have been any different. Petitioner's guilt was not based on fingerprints but rather on Detective Steimle's direct testimony of witnessing Petitioner, a felon, in possession of a firearm in contravention of federal law. Petitioner has thus not shown that he was in any way prejudiced by counsel's alleged failure to consult experts on the fingerprint issue.

detectives had no probable cause to enter the apartment building, and that the firearm's discovery was explained only by the testimony of Detective Steimle. Petitioner also asserts that counsel should have moved to suppress the testimony of the Government's expert witnesses because he believes their testimony was irrelevant and their qualifications were insufficient. Petitioner, however, has failed to show that any such motion would have been successful or would have altered the outcome of Petitioner's trial. The record instead makes it clear that any such motions would have been without merit.

Turning first to the issue of the firearm, the police clearly had sufficient reasonable suspicion to follow Plaintiff into the apartment building and to conduct an investigative stop of Petitioner. Detective Steimle saw Petitioner in possession of what appeared to be a firearm and saw Petitioner flee at an indication of police presence while seeking to hide the firearm. *See, e.g.*, *United States v. Amos*, 88 F.4th 445, 450-55 (3d Cir. 2023). A motion to suppress the firearm thus would have been without merit. Petitioner has likewise not even attempted to show a valid basis for the suppression of the testimony of the expert witnesses. Clearly, the testimony of each of the three experts was relevant, and Petitioner has not shown that their qualifications in any way warranted the preclusion of their testimony. Petitioner has thus not shown any valid basis for suppression, and counsel therefore could not have been ineffective in failing to file the meritless motions Petitioner now wishes had been filed. *Aldea*, 450 F. App'x at 152.

C.  **Petitioner's *Brady/Giglio* claim**

In his final claim, Petitioner asserts that the Government withheld "material impeachment evidence" from him in contravention of the Supreme Court's decisions in *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150, 154 (1972). Petitioner previously raised this claim in his motion for a new trial, which the Honorable Peter G. Sheridan, U.S.D.J. (ret.), denied on the merits in the underlying criminal matter. (*See* Docket No. 18-281 at ECF Nos. 123,

126.) Judge Sheridan, in deciding those motions, found that: (1) Petitioner's claims were based entirely on hearsay statements contained in newspaper articles and speculation; (2) Petitioner failed to show that the Government possessed the alleged information or suppressed it; and (3) no *Brady* or *Giglio* violation had occurred. (Docket No. 18-281 at ECF No. 123 at 10-23.) Although Judge Sheridan denied Petitioner's motion without prejudice, Petitioner did not appeal that decision or file a second motion regarding the *Brady* issue thereafter. Likewise, Petitioner's current habeas filings do not contain any new information beyond that contained in the denied motion for a new trial.

Petitioner may not use his current habeas proceeding to relitigate issues which were already determined in his underlying criminal proceeding. A § 2255 motion "is not a substitute for an appeal" and therefore cannot "be used to relitigate matters decided adversely" previously. *Nicholas*, 759 F.2d at 1075. As such, § 2255 "may not be employed to relitigate questions which were [already] raised and considered." *United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993) (internal quotations omitted); *see also United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) ("issues resolved in a prior direct appeal will not be reviewed again by way of § 2255 motion"); *see also Cvjeticanin v. United States*, No. 19-549, 2022 WL 280185, at *3 (D.N.J. Jan. 21, 2022) (§ 2255 motion may not be used to relitigate issues decided adversely on appeal or in post-trial criminal motions). As Petitioner already had a full and fair opportunity to litigate the *Brady/Giglio* issue in his motion for a new trial before Judge Sheridan, and Judge Sheridan rejected those claims on the merits, Petitioner may not now relitigate these issues in this matter.

Even were Petitioner's claims not barred, they would still be without merit. As explained in detail by Judge Sheridan, Petitioner's *Brady* and *Giglio* claims are based on speculation arising out of hearsay statements contained in newspaper articles written largely after Petitioner's trial. Petitioner has failed to show that the Government possessed, directly or constructively, the

information in question. Nor has Petitioner shown that the Government in any way suppressed the information, which largely concerns alleged misconduct by the detective other than Steimle involved in Petitioner's arrest. *See United States v. McNair*, No. 18-281, 2024 WL 2158188, at *2-9 (D.N.J. May 14, 2024). As Petitioner failed to show that the information was possessed or suppressed by the Government, he cannot show a *Brady* or *Giglio* violation for the reasons expressed by Judge Sheridan. Petitioner's claims are thus without merit as well as procedurally barred. *Id.*

### D. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), the petitioner in a § 2255 proceeding may not appeal from the final order in that proceeding unless he makes "a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Because all of Petitioner's claims are meritless for the reasons expressed above, Petitioner has failed to make a substantial showing of a denial of a constitutional right, and his motion is not adequate to receive encouragement to proceed further. This Court therefore denies Petitioner a certificate of appealability.

### IV. CONCLUSION

For the reasons set forth above, Petitioner's motion to vacate sentence (ECF No. 1) is **DENIED**, and Petitioner is **DENIED** a certificate of appealability. An appropriate order follows.

Dated: 10/3/2025

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE